

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

*/s/ Harlin DeWayne Hale*

**United States Bankruptcy Judge**

**Signed November 19, 2012**

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SQUARE 67 LIMITED PARTNERSHIP, | § | Case No. 12-31870-HDH-11 |
| | § | |
| Debtor. | § | |
| | § | |
| SQUARE 67 LIMITED PARTNERSHIP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| U.S. BANK NATIONAL ASSOCIATION, | § | |
| TRUSTEE FOR THE REGISTERED | § | |
| HOLDERS OF LB-UBS COMMERCIAL | § | |
| MORTGAGE TRUST 2002-C2, | § | Adversary No. 12-03107-HDH |
| COMMERCIAL MORTGAGE | § | |
| PASS-THROUGH CERTIFICATES, | § | |
| SERIES 2002-C2, *et al*. | § | |
| | § | |
| Defendants. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On November 6, 2012, this Court heard the above adversary proceeding. Previously, on September 25, 2012, this Court heard the parties' Motions for Summary Judgment. The next day, this Court sent counsel its ruling in letter form and requested that Defendants' counsel draft a

proposed order for the Court's review. On October 9, 2012, the Court entered its *Order on Motions for Summary Judgment*. Therein, the Court resolved many, if not most, of the issues in this adversary proceeding. *Inter alia*, claims made against certain Defendants were dismissed with prejudice and the Trust was found to be the owner of the Note and the Loan Documents, with the right to enforce the Note, Deed of Trust, and other Loan Documents. By November 2, 2012, the parties had reached an agreement regarding default interest and entered their *Joint Stipulation Regarding Default Interest Claim* ("Joint Stipluation"). At the time of trial, the remaining Defendant in this case is U.S. Bank, National Association, as Trustee for the Registered Holders of LB-UBS Commercial Mortgage Trust 2002-C2, Commercial Mortgage Pass-Through Certificates, Series 2002-C2 ("Defendant" or the "Trust").

The remaining issues were heard by this Court on November 6, 2012. At the end of trial the Court took the matter under advisement and indicated that it would enter its ruling shortly. The Court adopts the stipulated facts in the parties' Joint Pre-Trial Order, filed in this proceeding on October 29, 2012. In addition, having considered the evidence in this case, as well as arguments made by counsel, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052:

*Breach of Contract*

1. Under Texas law, to prevail on a breach of contract cause of action, the plaintiff must show: 1) the existence of a valid contract; 2) performance or tendered performance by the plaintiff; 3) breach of the contract by the defendant; and 4) damages sustained as a result of the breach. *B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex.App.—Houston [1st Dist.] 2009, *pet. denied*).

2. The Debtor alleges that the Defendant breached the loan agreement by purportedly overcharging interest during the life of the loan and by improperly assessing default interest.

       The Debtor does not contest how interest was calculated; only whether the calculation was proper under the terms of the Promissory Note ("Note"). The Note provides the agreed-upon formula for calculating interest on the loan. Specifically, Paragraph 2(a) of the Note provides that "[i]nterest on the principal sum of this Note shall be calculated by multiplying the actual number of days elapsed in the period for which interest is being calculated by a daily rate based on a 360-day year." This provision requires an interest calculation pursuant to what is commonly known as the "Banker's Rule."

3.   The proper and most natural construction of the Note's interest component is the one advanced by the Defendant. The Note contains an unambiguous method of calculating interest pursuant to the Banker's Rule. The Note instructs the parties to calculate interest by dividing the applicable interest rate of 7.74% by 360 to determine a daily rate, then multiplying that daily rate by the outstanding principal to determine a daily interest amount, and, finally, multiplying the daily interest amount by the number of days in the Accrual Period to determine the total interest due for the Accrual Period.

4.   This Court finds the Debtor's construction to be somewhat tortured, and the testimony offered by the Defendant's expert witness, Dr. Cox, more persuasive. Defendant properly applied the Banker's Rule to calculate the interest throughout the life of the Note pursuant to the formulas and calculations referenced above.

5.   The Debtor was in default and, subject to the Joint Stipulation, the lender is entitled to default interest. Section 3 of the Note, which concerns "default and acceleration," provides that the debt under the Note "shall without notice become immediately due and payable at the option of the Lender if any payment required in this Note prior to the Maturity Date is not paid on the date when due or on the happening of any other default… ." Additionally, section 9.1 of the Deed of Trust provides a list of occurrences that constitute Events of

Default. The first Event of Default listed, in subsection (a), states that it is an Event of Default when "any portion of the Debt is not paid on the date the same is due … ." The subsection relied upon by the Debtor's counsel, subsection (m), applies to "other" defaults which might be cured by the paying of money. In other words, subsection (m) does not apply to payment defaults, which is the type of default in this case.

6. The Defendant is not in breach of contract with the Debtor and Defendant properly calculated interest under the Note throughout the life of the loan. Its charges for default interest were proper.

*Objection to Defendant's Proof of Claim*

7. Defendant is seeking allowance of its proof of claim in an amount not less than $4,925,942.39, plus interest, fees, expenses, and charges that have accrued since the Petition Date, including $1,131,937.56 in reasonable attorneys' fees and expenses incurred by all Defendants through September 30, 2012.

8. The filing of a proof of claim constitutes *prima facie* evidence of the validity of the claim. 11 U.S.C. § 502(a). Once a prima facie claim has been established, the claimant will prevail unless a party who objects to the proof of claim produces evidence to rebut the claim. *In re Fidelity Holding Co., Ltd.*, 837 F.2d 696, 698 (5th Cir. 1988). Upon production of this rebuttal evidence, the burden shifts to the claimant to prove its claim by a preponderance of the evidence. *Id*. However, the ultimate burden of proof always lies with the claimant. *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000).

9. Debtor originally argued that the Trust Claim should be reduced by $408,146.43 to account for overcharged interest. At trial, the Debtor reduced the alleged overcharged interest reduction to approximately $271,000. For the reasons explained above, the Court finds that Defendant correctly calculated and charged interest and assessed interest on the Loan.

10. As to the attorneys' fees sought in the proof of claim, section 17 of the Note provides language that governs in the event that counsel is needed to collect the debt owed under the Note. To be clear, section 17 provides that the "[b]orrower also agrees to pay all reasonable fees and expenses of Lender." The term, "Lender," according to section 19 of the Note, includes "respective successors, assigns, heirs, executors and administrators." The Deed of Trust also includes a provision dealing with attorneys' fees, section 17.2(b), which states that the "[b]orrower shall pay to Lender on demand any and all expenses, including legal expenses and attorneys' fees, incurred or paid by Lender in protecting its interest in the property or in collecting any amount payable hereunder or in enforcing its rights hereunder… ."

11. The Defendant asks this Court to order the Debtor to pay approximately $1,130,000 in attorneys' fees that were incurred over a period starting in April 2012 and ending in September 2012. This Court recognizes that attorneys' fees were legitimately incurred in defense of this adversary proceeding brought by the Debtor, but the Debtor is only responsible for the portion representing services rendered on behalf of the Lender, as the term is defined in the promissory note. Therefore, the Debtor is not liable for the attorneys' fees associated with services rendered on behalf of non-lender entities, such as Bank of America, Wells Fargo, and Wachovia. In addition, the Debtor is not required to pay attorneys' fees associated with actions brought against the guarantor, Ralph Isenberg, as such fees are not chargeable to the estate.

12. Further, because the terms of the Note and the Deed of Trust specify that the Debtor is responsible for "reasonable" fees, this Court must make a determination as to the reasonableness of the remaining fees sought. After a review of the fees requested, *See* Defendant's Exhibits 14-18, the Court finds that the attorneys' fees awarded should be

reduced from the amounts stated by Defendant in its proof of claim based on the number of lawyers performing somewhat duplicate services, including multiple attorneys in many hearings before this Court and taking into account the amounts at issue in this single asset bankruptcy case. This Court has no doubt that the charges were made by the attorneys. The Court also notes that much of the fees sought were incurred in unsuccessful litigation brought by the Debtor. However, not all such fees may be awarded as reasonable. After careful review, this Court makes the following deductions, for the stated reasons:

| | |
|---|---|
| $67,392.00 | for services rendered on behalf of non-lender entities; |
| $9,446.50 | for litigation with Ralph Isenberg, as guarantor; |
| $150,000.00 | for duplication or other reasons for disallowance, including the amount at issue in this case. |

Mr. Barnard credibly testified at trial that the fees through September 2012 were $1,128,437.56. Making the above deductions, Defendant is allowed attorneys' fees of $901,599.06.

*Turnover of Reserve Funds*

13. The Debtor seeks the turnover, pursuant to 11 U.S.C. § 543, of certain funds held in reserve (the "Escrow Property") by the Trust based on the contention that the Trust is a custodian as defined in 11 U.S.C. § 101(11). Additionally, at trial the Debtor's counsel argued that turnover is proper pursuant to 11 U.S.C. § 542.

14. Turnover of reserve funds held by the lender is improper in this case. The Defendant does not meet the definition of a custodian in § 101(11). The reserve funds are not being held for the benefit of the general creditor body, but rather for the benefit of the lender. The reserve funds, pursuant to the Deed of Trust, allow the Trustee to make periodic tax and insurance payments, and nothing within the Deed of Trust gives the Debtor control over the reserve funds.

15. Even if the funds constitute property of the estate, "[t]he general rule regarding estate property is that the estate is entitled to the same rights that the debtor held prior to the filing of the bankruptcy." *See In re Dolphin Titan Int'l, Inc.*, 93 B.R. 508, 512 (Bankr. S.D. Tex. 1988) (citing *Bank of Marin v. England*, 385 U.S. 99, 87 S. Ct. 274, 17 L.Ed. 2d 197 (1966)). It follows that if a debtor, such as the Debtor in this case, lacks the right to possess or use property at the commencement of a case, then the debtor cannot use a turnover action to create such rights. *See In re Lauria*, 243 B.R. 705, 709 (Bankr. N.D. Ill. 2000). Based on the terms agreed to by the parties, the Debtor did not have the right to control the reserve funds when the bankruptcy case was filed; therefore, turnover of the funds would be improper.

*Conclusion*

16. For the reasons stated above, subject to a reduction in the attorneys' fees awarded, judgment will be awarded for all Defendants on all issues in this case. Counsel for Defendant shall submit a judgment on all claims within seven days of entry of these findings and conclusions.

###END OF FINDINGS AND CONCLUSIONS###